Alexandra YORK, Plaintiff–Appellant,

v.

ASSOCIATION OF THE BAR OF THE
CITY OF NEW YORK, et al.,
Defendants–Appellees.

Docket No. 01–7908.

United States Court of Appeals,
Second Circuit.

Argued Feb. 7, 2002.

Decided April 3, 2002.

Alexandra York, pro se, Appellant.

William T. Russell, Jr., Deborah N. Archer, Susan Digilio, Simpson Thacher & Bartlett, for Defendants–Appellees.

Before: POOLER and SOTOMAYOR, Circuit Judges, and GARAUFIS, District Judge.*

GARAUFIS, District Judge.

Plaintiff-appellant Alexandra York appeals from an order of the United States District Court for the Southern District of New York (Chin, J.) granting defendants-appellees' motion to dismiss her complaint for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6). The district court held that York was not an employee under Title VII, and that York's state and city law claims were barred by her election of an administrative remedy. For the reasons discussed, we find the district court was correct in holding that York's volunteer activities for the Association of the Bar of the City of New York (the "Association") did not make her an employee under Title VII, and we also find the election-of-remedies provisions in the Human Rights Law and the New York City Code validly barred York's state and city law claims as brought before the district court below. We therefore affirm the district court's dismissal of the claims.

---

* The Honorable Nicholas G. Garaufis, United States District Judge for the Eastern District of New York, sitting by designation.

## BACKGROUND

York was a dues-paying member of the Association from 1979–1992, and was employed full-time as an Assistant Attorney General in the Environmental Bureau of the New York State Department of Law at all times relevant to the action before the court. From 1979–1987, York was an inactive member of the Association. In 1987, York became a member of the Association's environmental law committee, but her activity in that role was minimal.

From 1989–1992, York was more active with the Association. In October of 1989, York proposed a program on international environmental issues that she subsequently developed and ultimately presented, under the auspices of the Association, six months later. Following that program, York began work on the following projects: creating a new Association committee on international environmental law; Association participation at the first United Nations Conference on Environment and Development ("UNCED"); publication, in concert with five law schools, of a short discussion of major issues relevant to UNCED (this project was ultimately abandoned); and presentation of two programs pertaining to climate change and UNCED, respectively. When York's membership on the environmental law committee expired in 1990, she was invited to join the Association's international law committee. Pursuant to York's activities with the Association, the Association provided York with workspace, clerical support, publicity, and reimbursement for out-of-pocket expenses. Additionally, York took tax deductions for expenses that were not reimbursed, and she enjoyed networking opportunities.

Appellee Stephen Kass became the first chair of the new international environmental committee. York alleges that Kass made sexual advances towards her, and when York was unreceptive, Kass limited her ability to participate in the Association's international environmental programs, and prevented her from attending UNCED under the auspices of the Association. York subsequently ceased her membership with the Association.

### The State Administrative Action

In May 1992, York filed a charge of unlawful discrimination in a place of public accommodation with the New York State Division of Human Rights (the "NYSDHR"). York brought the charge against the Association and Kass, and the charge did not include employment discrimination claims. The charge before the NYSDHR was dormant from 1993 through February 1998, during which time York lived in Micronesia, Indonesia, and the Philippines. In March and June of 1998, a ten-day hearing on the charge was held before an administrative law judge ("ALJ"). At the hearing, York argued for leave to amend her complaint to add a claim of employment discrimination. The Commissioner of the NYSDHR (the "Commissioner") dismissed York's charge on August 20, 1999. Pursuant to the dismissal, the Commissioner denied York's attempt to amend her complaint, finding York was not an employee of the Association. York did not appeal the dismissal. In September of 1999, however, York requested by letter that the Equal Employment Opportunity Commission (the "EEOC") review the dismissal of her NYSDHR action. In April 2000, the EEOC denied her request and adopted the findings of the NYSDHR.

### The Decision Below

On August 11, 2000, appellant York filed a complaint in the United States District Court for the Southern District of New York against the Association, former Association president Conrad Harper, and for-

mer Association committee chairs Stephen Kass and John French. The complaint alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the New York Human Rights Law, N.Y. Exec. Law §§ 290, et seq. (the "NYHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–502 (the "CHRL").[1] The defendants moved to dismiss pursuant to FED. R.CIV.P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. Appellees argued first that York was not an employee under Title VII, and second that York's state and city law claims were barred by election-of-remedies provisions. By memorandum decision of July 9, 2001, the district court granted the defendants' motions to dismiss, agreeing that York was not an employee under Title VII, and that the state and city law claims were barred by election of remedies provisions.

## DISCUSSION

■■■ We review de novo the district court's granting of defendants' motion to dismiss pursuant to Rule 12(b)(6). *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001). On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true. *Connolly v. McCall*, 254 F.3d 36, 40 (2d Cir.2001). To survive a motion to dismiss, however, the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action. Thus, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S.

232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### The Title VII Claims

■■ Appellant York's first argument on appeal is that the district court erred in finding that York was not an employee of the Association within the meaning of Title VII. She argues that although she served the Association in an unpaid, volunteer capacity, she satisfies this Circuit's definition of an employee under Title VII. We disagree.

42 U.S.C. § 2000e–2(a) provides:

It shall be an unlawful employment practice for an employer—

(1) to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...; or

(2) to limit ... his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex.

Title VII further defines employee as "an individual employed by an employer...." 42 U.S.C. § 2000e(f). We have refined the rather elliptical statutory definition to hold that "a prerequisite to considering whether an individual is [an employee] is that the individual have been hired in the first instance." *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir.1997). Furthermore, we have stated "that the question of whether someone is or is not an employee under Title VII usually turns on whether he or she has received direct or indirect remuneration from the alleged employer." *Pietras v.*

---

1. Appellant also brought defamation and intentional infliction of emotional distress claims, but they were withdrawn by York with leave of the district court on December 13, 2000. Consequently, we do not consider those claims.

*Bd. of Fire Comm'rs of the Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir.1999) (internal quotations omitted). Thus, we have held:

Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist because although 'compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, ... it is an essential condition to the existence of an employer-employee relationship.'

*O'Connor*, 126 F.3d at 115–116 (quoting *Graves v. Women's Prof'l Rodeo Ass'n*, 907 F.2d 71, 73 (8th Cir.1990)).

We have identified the following factors as indicative of "financial benefit": salary or other wages; employee benefits, such as health insurance; vacation; sick pay; or the promise of any of the foregoing. *O'Connor*, 126 F.3d at 116. We have further held that benefits must meet a minimum level of "significance," or substantiality, in order to find an employment relationship in the absence of more traditional compensation. *Pietras*, 180 F.3d at 473. In *Pietras*, we found benefits sufficient to satisfy the "remuneration test" in the form of "(1) a retirement pension, (2) life insurance, (3) death benefits, (4) disability insurance, and (5) some medical benefits." *Pietras*, 180 F.3d at 471.

Unlike a salary, vacation, sick pay, or benefits such as health insurance, disability insurance, life insurance, death benefits, and retirement pension, all of which primarily benefit the employee independently of the employer, the benefits put forward by York, such as clerical support and networking opportunities, were merely incidental to the administration of the Association's programs for the benefit of the bar at large. In other words, the list of benefits York recites was merely a necessary incident to the Association staging volunteer programs for the legal community. The purpose, however, of a volunteer member organization is to facilitate activity by its members in furtherance of the organization and its objectives. Thus, to make the incidents of group activity, without more, a benefit sufficient to satisfy the remuneration test, is to render all volunteer activity "employment" under Title VII. This is not so. In the absence of a clear contractual employer-employee relationship, a party claiming to be an employee under Title VII must come forward with substantial benefits not merely incidental to the activity performed in order to satisfy this Circuit's remuneration test.

Further, even if the benefits put forward by York were not merely incidental to her activities for the Association, they were not sufficiently substantial to meet the remuneration test. Clerical support, limited tax deductions, and "networking opportunities" are not the sort of substantial benefits that distinguish for remuneration purposes cases such as *Pietras*, which found an employee relationship under Title VII, from cases such as *O'Connor*, which did not. Thus we cannot find that York was an employee of the Association for Title VII purposes.

*The NYHRL and CHRL Claims*

■ Appellant York's second argument is that the district court improperly dismissed her NYHRL and CHRL claims as barred by statute and code because she previously raised those claims in state administrative proceedings. She argues that application of the election-of-remedies provisions to her state and city law rights of action results in a denial of her constitutional rights to due process and equal pro-

tection.[2] We disagree.

N.Y. Exec. Law § 297(9) provides a right of action against unlawful discriminatory practices. Section 297(9) applies, inter alia, to both employment discrimination and discrimination in places of public accommodation. N.Y. Exec. Law § 291(1), (2). The CHRL provides a similar right. As the district court recognized, "the language of the CHRL is nearly identical to that of § 297(9)", and discussion of the latter applies equally to the former. *York v. Ass'n of the Bar of the City of New York*, No. 00–5961, 2001 WL 776944 at *5 (S.D.N.Y. July 9, 2001)[3] (citing N.Y.C. Admin. Code § 8–502(a)).

◼ The NYHRL provides,

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages ... and such other remedies as may be appropriate ... unless such person had filed a complaint hereunder or with any local commission on human rights.

N.Y. Exec. Law § 297(9). Thus, by the terms of the statute and code, respectively, the NYHRL and CHRL claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court. *Moodie v. Federal Reserve Bank of New York*, 58 F.3d 879, 882 (2d Cir. 1995). Furthermore, once a plaintiff brings a case before the NYSDHR, he or she may appeal only to the Supreme Court of State of New York. N.Y. Exec. Law § 298. Appellant failed to appeal the adverse rulings by the NYSDHR to the Supreme Court of the State of New York, and instead attempted to relitigate her claims in the United States District Court, in contravention of the statutory and code schemes detailed above.

◼ The rights of action appellant attempts to assert are self-limiting, statutorily and code-created rights. Consequently, appellant can only assert the rights of action as prescribed by the respective statute and code. Simply put, a party can only exercise a statutory or code-created right of action as the statute or code provides. Furthermore, there is no question that the election-of-remedies provisions at issue here apply to federal courts as well as state. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir.2000). Likewise, there is no question that N.Y. Exec. Law §§ 297(9) and 298 are valid statutory instruments, and neither represents an inappropriate procedural limitation on the right of action which it modifies. *Moodie*, 58 F.3d at 884 (2d Cir.1995)

---

2. Appellant also argues that her employment discrimination claims, which were litigated before the NYSDHR, were dismissed pursuant to administrative convenience, N.Y. Exec. Law § 297(9), which would allow appellant to relitigate her employment claims in any court of her choosing. But a dismissal for administrative convenience is a specific statutory instrument, and the NYSDHR did not use that instrument to dismiss the employment discrimination claims.

York seeks to bring herself within another exception to the election-of-remedies bar that was created for charges filed with the EEOC and then referred by the EEOC to the NYSDHR pursuant to Title VII requirements. York argues that although she herself filed her charge with the NYSDHR, the EEOC "direct-

ed" her to do so. But the exception applies only when a charge is filed first with the EEOC, which then files it by automatic referral with the NYSDHR. *Wiley v. Citibank, N.A.*, No. 98 Civ. 1139, 2000 WL 122148, at *2 n. 1 (S.D.N.Y. Feb.1, 2000); *Bawa v. Brookhaven Nat'l Lab., Associated Univs., Inc.*, 968 F.Supp. 865, 868–70 (E.D.N.Y.1997). York, who filed her charge with the NYSDHR after seeking the EEOC's advice about where to file, did not suffer from the forced-election predicament that the exception is intended to remedy.

3. We note for reference purposes that although the Memorandum Decision of the court below is dated July 9, 2001, the Westlaw citation is dated July 11, 2001.

**128**

(finding § 297(9) to be a valid state law restriction on the state law right of action). Moreover, nothing in the particular facts of this case indicates that the valid statutory and code schemes in any way fail constitutional guarantees of due process or equal protection, and appellant York does not present any legitimate argument to that effect.

Finally, York contends that the "ubiquitous presence and influence" of the Association made her reluctant to appeal the adverse rulings of the NYSDHR to a New York state court, and that her reluctance was justified by the treatment given her claims by the Division, which she argues was "influence[d]" by the Association and its prestige. Both arguments are without merit. First, York's conclusory allegation that the Association influenced the NYSDHR's decision is essentially duplicative of her contentions regarding the constitutional infirmity of the administrative forum, which we have already rejected. Second, without expressing an opinion as to York's assertion that the Association's centrality in the legal profession would effectively have precluded her from obtaining a fair hearing in state court, we note that York, an attorney familiar with the Association and its membership, freely elected to seek a remedy in the NYSDHR. She cannot now be heard to complain that the forum she chose was infected by bias.

Thus, we find the district court correctly dismissed the state and city law claims due to the bar imposed by the election-of-remedies provisions.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED in its entirety.